UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CR-00101-FDW-DCK

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| DARIUS DEONTAE LITTLE, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss the Indictment, (Doc. No. 17), wherein Defendant argues the Indictment must be dismissed because it violates the Second Amendment under the Supreme Court's decisions in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022), and United States v. Rahimi, 602 U.S. __, 144 S. Ct. 1889 (2024). This matter has been fully briefed, (Doc. Nos. 24, 30), and is ripe for ruling. For the reasons set forth below, Defendant's Motion is **DENIED**.

### I. BACKGROUND[1]

On May 21, 2024, a grand jury indicted Defendant Darius Deontae Little on one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1.) Specifically, Defendant allegedly possessed a Glock 9mm pistol on or about February 4, 2024, knowing he had previously been convicted of at least one crime punishable by a term of imprisonment exceeding on year. (Id.) On October 10, 2012, Defendant was convicted of being an accessory after the fact to robbery with a deadly weapon, a felony under North Carolina state law, for which he was sentenced to thirty months' probation with a suspended term of incarceration of

---

[1] Defendant pled not guilty to the Indictment, (Minute Entry, June 18, 2024), and therefore enjoys a presumption of innocence at this stage of the proceedings. The background information stated herein is solely for the purposes of considering Defendant's motion. These facts have not been proven to a jury at trial.

1

sixteen to twenty-nine months. (Doc. No. 10, p. 4.) On February 20, 2023, Defendant was convicted of possession of a firearm by a felon in North Carolina state court, for which he was sentenced to twenty-four months' probation with a suspended term of incarceration of twelve to twenty-four months. (Id., p. 5.) Defendant was on probation for that offense at the time of the events that give rise to this case. (Id.; Doc. No. 31-1, pp. 4, 5.)

On July 24, 2024, Defendant moved to dismiss the Section 922(g)(1) charge against him on constitutional grounds, arguing—based on the Supreme Court's decisions in Bruen and Rahimi—that the charge violates the Second Amendment. The Government filed a response to Defendant's Motion on August 14, 2024. (Doc. No. 24.) Defendant filed a reply on August 26, 2024. (Doc. No. 30.) Accordingly, this matter is ripe for review and the Court must determine whether Count One of the Indictment is facially constitutional and constitutional as-applied to Defendant under the Second Amendment. The Court has determined the parties have adequately presented the issues in their briefs, and a hearing is not necessary.

## II. STANDARD OF REVIEW

Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure establishes that a court may dismiss a defective indictment for failure to state an offense where the indictment alleges the defendant violated an unconstitutional statute. United States v. Price, No. 2:22-cr-00097, 635 F.Supp.3d 455, 457–58 (S.D.W. Va. Oct. 12, 2022) (citing United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012)); United States v. Brown, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010) (citing In re Civil Rights Cases, 109 U.S. 3, 8–9 (1883)); United States v. Vandevere, No. 1:19-cr-63-MOC, 2019 WL 4439483, at *1 n.1 (W.D.N.C. Sep. 16, 2019). "To warrant dismissal of the indictment, [the defendant] would need to demonstrate that the allegations therein, even if true, would not state

2

an offense." United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004) (citing United States v. Hooker, 841 F.2d 1225, 1227–28 (4th Cir. 1988) (en banc)).

The United States argues Defendant's as-applied challenge is premature because it relies on facts outside the indictment. (Doc. No. 24, p. 23.) In Defendant's reply, counsel represents the parties agree the Court can consider Defendant's prior convictions, which are available in the electronic case file, (Doc. No. 10), and are a matter of public record. (Doc. No. 30, p. 13, n.12.) "A district court may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts." United States v. Weaver, 659 F.3d 353, 355 n.* (4th Cir. 2011). And a court can accept prior convictions without an evidentiary hearing or jury fact-finding, except where that prior conviction increases a defendant's potential sentence. See United States v. Erlinger, 602 U.S. 821, 835 (2024). Therefore, the Court will consider Defendant's as-applied challenge based on the limited record before it in the electronic case file.

### III. DISCUSSION

In his Motion to Dismiss, Defendant argues the Indictment must be dismissed because under Bruen the Second Amendment protects his conduct—possession of a pistol—and Rahimi reinforced Bruen's reasoning that the United States bears the burden to point to a historical tradition of regulating presumptively-protected conduct. (Doc. No. 17.) At the outset, the Court will recite the challenged statute, Section 922(g)(1), by which Congress created what is often called the "felon-in-possession" offense. Greer v. United States, 593 U.S. 503, 506 (2021). That statute reads in relevant part: "It shall be unlawful for any person . . . who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).

A.     The <u>Bruen</u> and <u>Rahimi</u> Framework

The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Cont. amend. II. In <u>Bruen</u>, the Supreme Court held that lower courts had been incorrectly reading precedent to require a means-end analysis in evaluating Second Amendment claims. <u>Bruen</u>, 597 U.S. at 22–23. Instead, the Court explained that <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), held, "on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms" for self-defense. <u>Bruen</u>, 597 U.S. at 20 (quoting <u>Heller</u>, 554 U.S. at 595) (emphasis in original). Further, the Supreme Court emphasized that "<u>Heller</u> and <u>McDonald</u> expressly rejected the application of any" means-end scrutiny because "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." <u>Id.</u> at 23 (quoting <u>Heller</u>, 554 U.S. at 634; <u>see also</u> <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 790–91 (2010)). In place of a means-end analysis, then, the Supreme Court stated the following standard for considering Second Amendment claims:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

<u>Bruen</u>, 597 U.S. at 24 (quoting <u>Konigsberg v. State Bar of Cal.</u>, 366 U.S. 36, 50, n.10 (1961)).

In applying <u>Bruen</u>'s standard, courts must first address the threshold question of whether the Second Amendment's plain text protects the conduct that is being regulated. <u>Id.</u> at 17, 32. In <u>Bruen</u>, this question had three parts. First, whether the individual challenging the regulation was "part of the people whom the Second Amendment protects." <u>United States v. Price</u>, 111 F.4th 392,

4

400 (4th Cir. 2024) (quoting Bruen, 597 U.S. at 31). Second, "whether the weapons regulated by the challenged regulation were 'in common use' for a lawful purpose." Id. And third, whether the Second Amendment protected the individuals' "proposed course of conduct." Id.

If the Second Amendment presumptively protects the conduct, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. at 19. This requires courts to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." Id. at 26. Because "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them," id. at 34 (quoting Heller, 554 U.S. at 634–35) (emphasis in original), the Second Amendment's "meaning is fixed according to the understandings of those who ratified it." Id. at 28. Thus, in assessing "unprecedented societal concerns or dramatic technological changes" that could not have been anticipated by the Founders, "the historical inquiry that courts must conduct will often involve . . . determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation." Id. at 28–29. To that end, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." Id. at 29 (quoting McDonald, 561 U.S. at 767 (quoting Heller, 554 U.S. at 599)).

However, the Court noted that "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." Id. at 30. Instead, "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Id.

5

Case 3:24-cr-00101-FDW-DCK    Document 35    Filed 10/31/24    Page 5 of 13

As this Court has previously noted, much of the language quoted by the Court in Bruen is dicta. United States v. Saleem, 659 F. Supp. 3d 683, 690 (W.D.N.C. 2023). Courts "are not bound by dicta or separate opinions of the Supreme Court." Price, 635 F.Supp.3d at 465 (citing Myers v. Loudoun Cnty. Pub. Schs., 418 F.3d 395, 406 (4th Cir. 2005)). However, "the Fourth Circuit has repeatedly instructed that '[w]e routinely afford substantial, if not controlling deference to dicta from the Supreme Court,' 'particularly when the supposed dicta is recent and not enfeebled by later statements.'" Id. (quoting Hengle v. Treppa, 19 F.4th 324, 347 (4th Cir. 2021) (internal citations omitted); Manning v. Caldwell, 930 F.3d 264, 281 (4th Cir. 2019) (en banc); McCravy v. Metro. Life Ins. Co., 690 F.3d 176, 181 n.2 (4th Cir. 2012) ("[W]e cannot simply override a legal pronouncement endorsed . . . by a majority of the Supreme Court.")).

While Bruen instructed courts as to the appropriate framework that applies to Second Amendment challenges, it did not involve the "felon-in-possession" statute or the overall federal statutory scheme disarming certain individuals, 18 U.S.C. § 922 *et seq.* Recently, in Rahimi, 144 S. Ct. 1889, the Supreme Court clarified the Bruen standard in that context and reaffirmed Bruen's guidance. Id. at 1898. Further, the Supreme Court criticized the Fifth Circuit for reading Bruen to require a "historical twin," rather than a "historical analogue." Id. at 1903. There, in reviewing a challenge to 18 U.S.C. § 922(g)(8), the Court clarified that "the appropriate analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." Id. at 1898 (emphasis added). The Fourth Circuit recently confirmed that this is the crux of the Supreme Court's ruling in Rahimi. See United States v. Price, 111 F.4th 392, 398 (4th Cir. 2024).

C.  **As-Applied Challenge to 18 U.S.C. § 922(g)(1)**

Defendant urges the Court to consider whether Section 922(g)(1) is unconstitutional as-applied to him based on his criminal history, and argues the burden is therefore on the United States to point to a historical analogue supporting disarmament of individuals like him.

First, the Court must determine whether Defendant's conduct is presumptively protected by the Second Amendment. Bruen, 597 U.S. at 31. Unlike the circumstances presented in this Court's prior decision in Saleem, 659 F. Supp. 3d 683, which involved short-barreled shotguns and silencers, Defendant allegedly possessed a handgun. Bruen itself commands the answer to whether possessing a handgun is presumptively protected by the Second Amendment must be "yes." See Bruen, 597 U.S. at 32 ("We therefore turn to whether the plain text of the Second Amendment protects [the permit applicants'] proposed course of conduct—carrying handguns publicly for self-defense. We have little difficulty concluding that it does."); Heller, 554 U.S. at 629 ("[T]he American people have considered the handgun to be the quintessential self-defense weapon.") [2]

Second, the Court must determine whether Defendant is "part of the people whom the Second Amendment protects." Price, 111 F.4th at 400 (quoting Bruen, 597 U.S. at 31). The United States urges he is not. (Doc. No. 24, pp. 13–23.) This, in the Court's view, is the more difficult inquiry. The Fourth Circuit recently recognized, albeit in dicta, that a convicted felon "is likely not one of 'the people' whom the Second Amendment protects." Price, 111 F.4th at 402, n.4 (quoting Bruen, 597 U.S. at 31–32) (discussing a Circuit split on the issue post-Bruen). At least one Circuit

---

[2] With respect to whether the Second Amendment protects Defendant's "proposed course of conduct," Bruen, 597 U.S. at 31, the Court does not find this inquiry applicable here. It was, of course, the focus of the Supreme Court's reasoning in Bruen, in which the petitioners challenged a state permitting scheme in a civil suit. Defendant has no "proposed" course of conduct—the conduct is in the past. To the extent Defendant's past course of conduct, possessing a weapon, was unlawful because he has prior felony convictions, the Court finds that inquiry collapses into the inquiries discussed above.

7

Judge would conclude that they fall outside the Second Amendment's protection. Id. at 412–14 (Agee, J., concurring in the judgment). But Price ultimately left "the open questions regarding as-applied challenges and nonviolent felons" "for another day." Id. at 402, n.4. The Court must "look to the historical scope of the Second Amendment right" to determine whether Defendant's conduct is protected. Id. at 401.

The Second Amendment did not create the right to keep and bear arms—it secured for the people a pre-existing right. Heller, 554 U.S. at 592–94. Therefore, while Defendant argues the United States's reliance on English common law cases is misplaced, this Court and the Supreme Court have found that precedent useful in defining the contours of that pre-existing right. The Supreme Court in Rahimi cited firearms restrictions dating back to the 1338 Statute of Northampton. See Rahimi, 144 S. Ct. at 1899 (explaining "[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others," including the Statute of Northampton and The Militia Act of 1662) (citing Bruen, 597 U.S. at 40). The Supreme Court further noted that, while regulations disarming political opponents had dissipated by the time of the founding, "regulations targeting individuals who physically threatened others persisted." Rahimi, 144 S. Ct. at 1899.

Legislatures like Congress have longstanding authority and discretion to disarm certain individuals in an effort to address a risk of danger to society. For example, during the colonial era legislatures frequently prohibited Native Americans from owning firearms. Act of Aug. 4, 1675, 5 Records of the Colony of New Plymouth 173 (1856); Act of July 1, 1656, Laws and Ordinances of New Netherland 234–35 (1868). In some of the American colonies, religious minorities were subject to disarmament, 52 Archives of Maryland 454 (1935), 7 The Statutes at Large: Being a Collection of All the Laws of Virginia 35 (1820), as were those who refused to declare an oath of

loyalty during the Revolutionary War. See, e.g., 4 Journals of the Continental Congress, 1774–1789, at 205 (Worthington Chauncey Ford ed., 1906); Act of Nov. 15, 1777, ch. 6, 1777 N.C. Sess. Laws 231; 9 The Statutes at Large: Being a Collection of All the Laws of Virginia 281–82 (1821). The early legislature of North Carolina authorized forfeiture of firearms for non-violent hunting offenses. See Act of Apr. 20, 1745, ch. III, 23 The State Records of North Carolina 218–19. Many of these restrictions would, of course, be impermissible today as violative of other constitutional Amendments. But the historical record supports that the disarmament of individuals who deviate from the legal norms of the day is firmly grounded in the history and tradition of firearms regulations in the United States.

Defendant argues these historical analogues, some of which the United States cites, are insufficient because they are the same as those cited by the Solicitor General in Rahimi, which involved a different statute. (Doc. No. 30, p. 4.) While that may be the case, it does not follow that there is no overlap between those who may constitutionally be charged under 922(g)(1) and those who may be charged under 922(g)(8). The common denominator is dangerousness. On the record here, the Court concludes those historical analogues support the application of Section 922(g)(1) to Defendant. As an initial matter, this Court cannot conclude Defendant is a non-violent felon. He has a prior conviction for being an accessory after the fact to armed robbery with a deadly weapon—a dangerous crime against a person using a deadly weapon. See N.C. Gen. Stat. § 14-87 (including as an element that "the life of a person is endangered or threatened"); N.C. Gen. Stat. § 14-7. And he has been convicted of possessing a firearm as a felon once before. Cf. Range v. Garland, 69 F.4th 96, 100–03 (3d Cir. 2023) (concluding prospective firearm purchaser with a prior felony conviction for making a false statement to receive food stamps was part of "the people" under the Second Amendment). As several appellate courts have noted, Bruen and Rahimi

9

may well raise questions about the application of § 922(g)(1) to individuals convicted of felonies such as mail fraud, perjury, or esoteric State-law felonies. See Range, 69 F.4th at 103; Price, 111 F.4th at 402, n.4.[3] That issue is not before the Court today. Instead, Defendant's prior convictions demonstrate Congress may disarm him under Section 922(g)(1) because his conduct is not presumptively protected under the Second Amendment's reservation of the right to bear arms to "the people."

For these reasons, the Court concludes Defendant's as-applied challenge fails.

**D.      Facial Challenge to 18 U.S.C. § 922(g)(1)**

In light of the standard outlined in Bruen, and with the Supreme Court's guidance in Rahimi, the Court will now consider Defendant's facial challenge to Section 922(g)(1). A facial challenge is successful only if "no set of circumstances exist[]" under which the application of a challenged regulation is constitutional. Rahimi, 144 S. Ct. at 1898 (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). In Rahimi, the Supreme Court criticized the Fifth Circuit for incorrectly applying the test for a facial challenge. Id. at 1903. Thus, Defendant's facial challenge fails if Section 922(g)(1) is constitutional in even one of its applications.

Defendant argues that because "laws disarming anyone convicted of a felony did not exist at our founding, § 922(g)(1) is inconsistent with this Nation's history and tradition of firearm regulation." (Doc. No. 17, p. 12.) At a bond hearing before the Magistrate Judge, defense counsel acknowledged the law in this area has been in flux in recent years. (Doc. No. 30-1, pp. 5–6.) But no federal appellate court has held that Section 922(g)(1) is facially unconstitutional in light of Bruen alone. See Jenkins v. United States, No. 3:21-cr-89, 2024 WL 3190954, at *5 (W.D.N.C. June 26, 2024) ("[N]o federal appellate court has ever held that Section 922(g)(1) is facially

---

[3] At least one other has concluded the Second Amendment does not demand an individualized determination of dangerousness. United States v. Jackson, 100 F.4th 1120, 1128 (8th Cir. 2024).

unconstitutional.") (internal citations omitted); Range, 69 F.4th at 106 (coming to the "narrow" conclusion that Section 922(g)(1) was unconstitutional as applied), vacated and remanded, 144 S. Ct. 2706. The Fourth Circuit, in United States v. Canada, 103 F.4th 257, 258 (4th Cir. 2013), also declined to reach such a result. And while Defendant argues Rahimi abrogated Canada, (Doc. No. 17, p. 9; Doc. No. 30, p. 9), other district courts in the Fourth Circuit have continued to follow Canada after Rahimi. See United States v. Sullivan, No. 4:24-cr-27, 2024 WL 3540987, at *2 (E.D. Va. July 25, 2024); See United States v. Craig, No. 22-4302, 2024 WL 3465644, at *1 (4th Cir. July 18, 2024) (per curiam). Price, 111 F.4th at 402, n.4 [4]

Defendant's Motion attached four orders from the Supreme Court vacating appellate court opinions and remanding in light of Rahimi. (See Doc. No. 17-3.) Three of those cases arose out of the Eighth Circuit. After Defendant filed his Motion, the Eighth Circuit affirmed each of those decisions on remand, concluding nothing in Rahimi mandates the conclusion that Section 922(g)(1) is facially unconstitutional. See Jackson, 110 F.4th at 1129; United States v. Cunningham, 114 F.4th 671, 675 (8th Cir. 2024); United States v. Doss, No. 22-3662, 2024 WL 3964616, at *1 (8th Cir. Aug. 28, 2024) (per curiam). The cases remanded to the Third and Tenth Circuits in Range and Vincent v. Garland, 80 F.4th 1197 (10th Cir. 2023), vacated and remanded, 144 S. Ct. 2706, remain pending. However, the Fifth Circuit has followed the Eighth Circuit and concluded history supports the constitutionality of Section 922(g)(1). United States v. Diaz, 116 F. 4th 458, 471 (5th Cir. 2024). And the Third Circuit has affirmed at least one 922(g)(1) conviction after Rahimi while Range remains pending on remand. United States v. Brinson, 2024 WL 4164268, at *2 (3d Cir. Sept. 12, 2024). Further, the Sixth Circuit has agreed, after Rahimi,

---

[4] Defendant argues Canada has been abrogated because it applied Bruen, but not Rahimi. However, even if Canada is no longer binding on this Court, the undersigned finds it strongly persuasive, particularly given the Fourth Circuit could have acknowledged its abrogation in Price and did not do so.

11

that Section 922(g)(1) is facially constitutional. See United States v. Williams, 113 F.4th 637, 643, 657 (2024).

Ultimately, Rahimi dealt with a challenge to 18 U.S.C. § 922(g)(8), not (g)(1). And it upheld the constitutionality of that provision. See United States v. Philpot, No. 23-3368, 2024 WL 3429177, at *7, n.1 (6th Cir. July 16, 2024) (declining to find plain error where district court upheld 922(g)(1) conviction before Rahimi "because it addressed a different provision and because it endorsed the statute's constitutionality"). And the Supreme Court in Rahimi chose not to answer the question of whether Section 922(g)(1), as opposed to Section 922(g)(8), unconstitutionally burdened a Second Amendment right either facially or as-applied. Rahimi, 144 S. Ct. at 1902–03.

For these reasons, the Court concludes Defendant's facial challenge to Count One of the Indictment fails. While the law may be "unsettled" compared to years past, (Doc. No. 30-1, p. 5), the Court concludes the great weight of authority and recent Fourth Circuit guidance support the conclusion that 18 U.S.C. § 922(g)(1) remains constitutional on its face.

### IV. CONCLUSION

The Court finds Defendant's argument that the Indictment must be dismissed as unconstitutional because Section 922(g)(1) violates the Second Amendment on its face and as-applied without merit. While Bruen, Rahimi, Canada, and Price may leave open the door to as-applied challenges to Section 922(g)(1), Defendant's as-applied challenge fails. Further, Section 922(g)(1) is not unconstitutional on its face because it does not meet the demanding standard in Salerno, 481 U.S. at 745 (holding a facial challenge is successful only if "no set of circumstances exist[]" under which the application of a challenged regulation is constitutional).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss the Indictment, (Doc. No. 17), is DENIED.

**IT IS SO ORDERED.**

Signed: October 30, 2024

Frank D. Whitney
United States District Judge